**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TIMOTHY ALLEN OGDEN,** | : | **CIVIL ACTION NO. 1:06-CV-2299** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **MIFFLIN COUNTY;** | : | |
| **BERNIE J. ZOOK; JAMES** | : | |
| **CRISSWELL; and LT. KATHY** | : | |
| **WEAVER,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Timothy Allen Ogden brings this counseled civil rights action pursuant to 42 U.S.C. § 1983 against defendant Mifflin County, Pennsylvania, as well as the following defendants in both their individual and official capacities: (1) Bernie J. Zook, warden at the Mifflin County Correctional Facility, (2) James Crisswell, deputy warden at the Mifflin County Correctional Facility, and (3) Lieutenant Kathy Weaver, a corrections officer at the Mifflin County Correctional Facility. Ogden seeks to hold defendants liable for violating his Eighth Amendment right to be free from cruel and unusual punishment by virtue of defendants' alleged failure to protect him from an assault by a fellow inmate. Presently before the court is defendants' motion for summary judgment (Doc. 19). For the reasons that follow, defendants' motion will be granted.

I.   **Statement of Facts**[1]

The dispute in this case centers upon a prisoner-on-prisoner assault that occurred on June 17, 2005.  The parties' respective counsel largely agree on the facts underlying the matter, but disagree on the proper interpretation of those facts.  Plaintiff Timothy Ogden ("Ogden") was a parolee arrested for driving under the influence of alcohol in April 2005.  (Doc. 20 ¶ 1; Doc. 29 ¶ 1.)  As a result of this arrest, Ogden was detained in the Huntingdon County Prison ("HCP").  (Doc. 20 ¶ 1; Doc. 29 ¶ 1.)  Due to overcrowding at HCP, however, Ogden was transferred to the Mifflin County Correctional Facility ("MCCF") in May 2005.  (Doc. 20 ¶ 2; Doc. 29 ¶ 2.)  This was the third time that Ogden had been incarcerated at MCCF since 2003.  (Doc. 20 ¶ 3; Doc. 29 ¶ 3.)  Ogden freely admits that he never experienced any problems at MCCF during these prior stays.  (Doc. 20, Ex. A at 21-22.)

Soon after his transfer, Ogden began socializing with another inmate, Justin Herb ("Herb").  (Doc. 20 ¶ 5; Doc. 29 ¶ 5.)  Ogden and Herb were acquaintances who spent time together during Ogden's prior periods of incarceration at MCCF, and Ogden considered Herb "one of [his] friends in prison."  (Doc. 20, Ex. A at 23-24.)  From the time Ogden was transferred in May 2005, until June 17, 2005, neither Herb nor any other inmate threatened Ogden or attempted to assault him in any

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Ogden, the non-moving party.  See infra Part II.

way.  (Doc. 20, Ex. A at 22, 24.)  In fact, Ogden never had any reason to believe his safety was at risk during his incarceration.  (Id. at 24.)

Although Ogden never personally felt threatened by Herb prior to June 2005, Herb was hardly a model prisoner.  On numerous occasions between 2002 and 2003, Herb was disciplined for directing vulgar language toward prison guards, kicking his cell, and generally creating noise disturbances.  (See Doc. 30, Exs. F, G, I, K, L, M.)  Additionally, there were several incidents in which Herb was responsible for the destruction of prison property:  in March 2005, he punched a glass window in a prison visiting room, shattering it, (see Doc. 30, Ex. O); Ogden observed Herb flood his cell by clogging the toilet with a bed blanket, (see Doc. 30 at 6); and Herb once punched a light in his cell, shattering the light with his fist, (see id.).[2]  However, prior to June 17, 2005, Herb never attempted to attack another inmate or guard, and the record is devoid of evidence suggesting that Herb exhibited any tendency to engage in physical violence toward another person.[3]  (See Doc. 20, Ex. B at 206-07; Ex. C at 31; Ex. H ¶¶ 3-4.)

---

[2] Herb was also disciplined for kicking his cell door and using vulgar language on three occasions between April 2005, and late May 2005.  (See Doc. 30, Exs. P, Q, R.)  On one of these occasions, Herb was placed in restraints.  (See Doc. 30, Ex. R.)

[3] Additionally, aside from one prior charge for "harassment/strike, shove, kick, etc.," Herb had no criminal history indicative of violent crime prior to June 17, 2005.  (See Doc. 20, Ex. I.)  Herb's prior charges consisted of property and intoxication offenses, including trespassing, tampering with property, burglary, receiving stolen property, public drunkenness, driving under the influence of alcohol, possession of drug paraphernalia, and purchasing alcohol for minors.  (See id.)

3

On June 17, 2005, Herb attacked Ogden without warning by knocking him to the ground and then slamming his head between the cell door and the doorjamb. (Doc. 20, Ex. A at 13-14; Doc. 30 at 7.)  The attack rendered Ogden unconscious, fracturing his skull and eye socket, and impairing his vision and hearing.  (See Doc. 20, Ex. B at 168-72; Doc. 20, Ex. D; Doc. 30 at 7.)  Ogden was immediately rushed to a hospital by ambulance, where he received emergency medical treatment.  (See Doc. 20, Ex. D.)  Ogden continues to suffer constant migraine headaches and pain when moving his jaw.  (Doc. 30 at 7.)  Defendants do not dispute that Ogden was injured, but assert that there is no evidence that they knew of or were deliberately indifferent to the risk that Herb might assault Ogden.

## II.   __Standard of Review__

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89

(1986); see also Fed. R. Civ. P. 56(c), (e).  Only if this threshold is met may the cause

of action proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.   **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a

means to redress violations of federal law committed by state officials.  See 42

U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Id.  Section 1983 is not a source of substantive rights, but merely a method for

vindicating violations of other federal laws.  Gonzaga Univ. v. Doe, 536 U.S. 273,

284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a

claim under this section, the plaintiff must show a deprivation of a "right secured

by the Constitution and the laws of the United States . . . by a person acting under

color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro,

51 F.3d 1137, 1141 (3d Cir. 1995)).

In the action *sub judice*, Ogden alleges that defendants violated his Eighth

Amendment right to be free from cruel and unusual punishment by virtue of their

failure to protect him from inmate violence during the period of his incarceration.[4]

In order for Ogden's § 1983 claim to proceed against each of the named defendants,

he must first establish the existence of a constitutional violation. Accordingly, the

court will begin by addressing this threshold inquiry.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S.

CONST. amend. VIII. In the context of prisoner confinement, it is well-established

that "the treatment a prisoner receives in prison and the conditions under which he

is confined are subject to scrutiny under the Eighth Amendment." Farmer v.

Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31

(1993)). Not only must prison officials refrain from the use of excessive force against

prisoners, see Hudson v. McMillan, 503 U.S. 1, 6-7 (1992), and ensure that prisoners

receive adequate food, clothing, and medical care, Farmer, 511 U.S. at 832-33, but

they must also "take reasonable measures to guarantee the safety of the inmates"

vis-a-vis other inmates, Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see also

Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). As the Supreme Court has

stated, "Being violently assaulted in prison is simply 'not part of the penalty that

---

[4] Ogden's cause of action is properly raised under the Eighth Amendment, which applies to a failure-to-protect claim advanced by an incarcerated parolee, as opposed to the Fourteenth Amendment's Due Process Clause, which governs a failure-to-protect claim raised by a pretrial detainee. See, e.g., Giddings v. Joseph Coleman Ctr., 473 F. Supp. 2d 617, 623 (E.D. Pa. 2007) (holding that a parolee in confinement, who is "completely dependent on the [incarceration facility] for all of his basic needs," is protected by Eighth Amendment prohibitions on cruel and unusual punishment); Alford v. Owen, Civ. A. No. 03-795, 2005 WL 2033685, at *6 (D.N.J. Aug. 23, 2005) (holding that the claims of a pretrial detainee are analyzed under the Fourteenth Amendment's Due Process Clause).

criminal offenders pay for their offenses against society.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)).

Thus, the Eighth Amendment places upon prison officials a duty to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." <u>Hamilton</u>, 117 F.3d at 746 (quoting <u>Farmer</u>, 511 U.S. at 833). In order for a plaintiff to prove a constitutional violation in a failure-to-protect case, a claimant must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials acted with "deliberate indifference to his health and safety." <u>Farmer</u>, 511 U.S. at 834; <u>see also</u> <u>Beers-Capital v. Whetzel</u>, 256 F.3d 120, 125 (3d Cir. 2001); <u>Hamilton</u>, 117 F.3d at 746. In the instant matter, the court finds that Ogden's claim fails both prongs of the Eighth Amendment inquiry.

### A.    Substantial Risk of Serious Harm

The court must conduct an objective analysis under the substantial risk prong of the inquiry, <u>see</u> <u>Farmer</u>, 511 U.S. at 834; <u>Hamilton</u>, 117 F.3d at 746, and as such, the inquiry ordinarily will not be satisfied by evidence of a single incident or isolated incidents, <u>see</u> <u>Riley v. Jeffes</u>, 777 F.2d 143, 147 (3d Cir. 1985). An objectively substantial risk of harm, however, may be "established by much less than proof of a reign of violence and terror." <u>Id.</u> (quoting <u>Shrader v. White</u>, 761 F.2d 975, 978 (4th Cir. 1985)).

Ogden has failed to adduce sufficient evidence that he was incarcerated under conditions posing a substantial risk of serious harm. To the contrary, it is

undisputed that, until the incident in question, Ogden was never threatened, never assaulted, and never felt in any danger whatsoever at MCCF. (Doc. 20, Ex. A at 22-24.) During *three* separate periods of incarceration at the facility, he "never had any problems" and conceded that both guards and inmates treated him amicably. (Id. at 22.) Prior to Herb's attack, Ogden admits that the two prisoners were friends. (Doc. 20, Ex. A at 23.) Thus, when Herb assaulted Ogden, it was unexpected and without notice; to this day, Ogden remains unsure of the reason for the attack.[5] (See id. at 70-78; see also Doc. 20, Ex. B at 206-07.)

Despite these admissions, Ogden claims that Herb's repeated outbursts of profanity, coupled with those instances in which Herb was destructive of prison property, revealed an inmate that was "mentally unstable and dangerous," with a "propensity for violence." (Doc. 30 at 11.) By virtue of their failure to recognize this violent propensity before an assault occurred, Ogden argues that MCCF officials failed in their duty to provide him with appropriately safe conditions of confinement.

In the instant case, Herb cursed at prison guards, kicked his cell door, and damaged prison property. Although problematic in terms of standard institutional security, Herb's obstreperous and nonconforming behavior, standing alone, does

---

[5] During his deposition, Ogden indicated that he "heard stories that somebody told him [Herb] that my dad was a CO in Huntingdon Prison." (Doc. 20, Ex. A at 77-78.) This led Ogden to speculate that he was attacked because Herb thought he was a "snitch." (See id.) Ogden heard these rumors after the incident in question and, even with this consideration in mind, stated that he nonetheless "ha[s] no idea why" Herb assaulted him. (See id. at 78.)

not prove that he posed an objectively substantial risk of serious harm to *other inmates*.  All correctional facilities house inmates with varying degrees of non-compliant behavior.  Behavioral issues, without more, are insufficient to establish the serious risk of harm element.  In the case *sub judice*, the record is simply bereft of any instance in which Herb displayed a tendency to attack another person, let alone a fellow prisoner.  Although such evidence is not necessarily a prerequisite to satisfaction of the substantial risk prong, some palpable threat of actual physical violence is generally required by the case law in order to establish an objectively substantial risk of harm.  See, e.g., Hamilton, 117 F.3d at 744-47 (recounting multiple instances of actual violence and threatened attacks upon plaintiff and finding substantial risk prong satisfied); Pearson v. Vaughn, 102 F. Supp. 2d 282 (E.D. Pa. 2000) (finding that prisoner was placed at substantial risk when he was transferred from segregated housing to general population despite prior assaults and outstanding threats against him).[6]

---

[6] Additionally, courts have consistently rejected prisoner-plaintiffs' Eighth Amendment claims in cases that present no palpable threat of violent behavior by the assailant or threats of violence directed toward the plaintiff.  See, e.g., Williams v. Brown, Civ. No. 05-796, 2007 WL 2079935, at *3 (D.N.J. July 17, 2007) (finding the fact that prisoner-attacker had never fought with his cellmate-plaintiff, or any other inmate, dispositive in dismissing plaintiff's substantial risk claim); Hemphill v. Ocean County Dep't of Corr., Civ. A. No. 05-1950, 2006 WL 2470608, at *14-15 (D.N.J. Aug. 24, 2006) (finding no substantial risk when, prior to attack, neither plaintiff nor prison officials knew of any threats suggesting that plaintiff would be assaulted); Alford, 2005 WL 2033685, at *7 (rejecting substantial risk claim when plaintiff was assaulted by cellmate, with whom he "got along pretty good," and who had no history of physical violence during his incarceration).

Interestingly, Ogden details every instance in which Herb was disciplined by prison authorities between 2002 and 2005, and not once was disciplinary action taken as the result of a physical assault, or threatened assault, upon a prisoner or guard.  (See Doc. 30 at 3-7.)  Herb's attack on Ogden was unexpected, not just to Ogden, but also to prison authorities who had no objective evidence of a risk of harm to Ogden or any other person.[7]  The evidence clearly shows that the June 17, 2005 assault was an isolated incident of assault on another person.  It is insufficient to establish the basis for constitutional liability.  See Riley, 777 F.2d at 147 (noting that an isolated incident is generally insufficient evidence to establish an Eighth Amendment violation); see also Williams v. Brown, Civ. No. 05-796, 2007 WL 2079935, at *3 (D.N.J. July 17, 2007) (finding that an inmate-on-inmate assault was "an isolated attack" when the aggressor inmate had never been in any fights with other prisoners and had no history of violence within the prison system).

### B. __Deliberate Indifference__

In cases of prisoner incarceration, Eighth Amendment liability attaches only to the "unnecessary and wanton infliction of pain."  Wilson v. Seiter, 501 U.S. 294,

---

[7] The court finds Ogden's testimony contradictory to his allegation that Herb was mentally unstable, with a propensity for violence.  If Herb was truly as unhinged and potentially violent in the weeks leading up to the attack as Ogden's briefing papers make him appear, (see Doc. 30 at 11-14.), Ogden surely would not be so ignorant regarding the reason that he was assaulted.  Ogden testified, however, that he was unsure of Herb's rationale when the assault occurred, and he remains unsure today.  (See Doc. 20, Ex. A at 77-78.); see also Williams, 2007 WL 2079935, at *3 (describing similar facts and stating, "If the cellmate had a violent history of attacking without provocation, . . . Plaintiff surely would have some idea why he was attacked").

298 (1991) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)).  Thus, not only must

a prisoner's conditions of incarceration be sufficiently serious, but prison officials

must possess a "sufficiently culpable state of mind" in allowing such a condition to

persist.  <u>Beers-Capital</u>, 256 F.3d at 125.  This second prong of the Eighth

Amendment inquiry requires the court to analyze whether prison officials were,

from a subjective standpoint, deliberately indifferent to an inmate's health or safety.

<u>Farmer</u>, 511 U.S. at 834.  Specifically, the question is whether an official consciously

knew of and disregarded an excessive risk to the prisoner's well being.  <u>See</u> <u>Farmer</u>,

511 U.S. at 840-44; <u>Hamilton</u>, 117 F.3d at 747.  It is not enough to show that the

prison official was "aware of the facts from which the inference could be drawn that

a substantial risk of serious harm exists."  <u>Farmer</u>, 511 U.S. at 837.  Rather, the

prison official "must also draw the inference."  <u>Id.</u>  The official's actual knowledge

may be proved by circumstantial evidence.  <u>Beers-Capital</u>, 256 F.3d at 131.

In the instant matter, the court finds that the conditions of Ogden's

incarceration do not demonstrate a deliberate indifference.  Indeed, the record is

clear that MCCF officials did not consciously disregard a known risk to Ogden's

health or safety.  Ogden acknowledges that during three separate periods of

imprisonment at MCCF, he never felt threatened by either the prison guards or

other inmates.  (<u>See</u> Doc. 20, Ex. A at 22-24.)  When Herb attacked Ogden in June

2005, the assault came as a surprise to both Ogden—who is still unsure of Herb's

rationale—and prison officials.  (<u>See</u> <u>id.</u> at 77-78; <u>see also</u> Doc. 20, Ex. B at 206-07.)

The record is devoid of evidence that prison officials knew that the assault was

likely and either ignored the risk or simply let the attack occur.  Quite simply,

before Herb's unexpected actions on June 17, 2005, there were no health or safety

risks directed at Ogden that defendants disregarded.

### IV.   <u>Conclusion</u>

The severe beating of Ogden was despicable, but under the precedents set

forth above, responsibility for the assault stops with Herb.  The court finds that

Ogden's Eighth Amendment claim fails to satisfy both the substantial risk and the

deliberate indifference requirements of <u>Farmer</u> and its progeny.  Accordingly,

defendants' motion for summary judgment is granted in its entirety.

An appropriate order will issue.


                                        <u>  S/ Christopher C. Conner  </u>
                                        CHRISTOPHER C. CONNER
                                        United States District Judge


Dated: October 15, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TIMOTHY ALLEN OGDEN,** | : | **CIVIL ACTION NO. 1:06-CV-2299** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **MIFFLIN COUNTY;** | : | |
| **BERNIE J. ZOOK; JAMES** | : | |
| **CRISSWELL; and LT. KATHY** | : | |
| **WEAVER,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 15th day of October, 2008, upon consideration of the

defendants' motion for summary judgment (Doc. 19), and for the reasons set forth in

the accompanying memorandum, it is hereby ORDERED that:

1. The defendants' motion for summary judgment (Doc. 19) is
   GRANTED. See FED. R. CIV. P. 56(c).

2. The Clerk of Court is directed to enter JUDGMENT in favor of
   defendants and against plaintiff on all claims.

3. The Clerk of Court is directed to CLOSE this case.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge